UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Eleonore Sens, Chandan Khanna, and
Robin Legrand,

      Plaintiffs,

v.

Hennepin County Sheriff David
Hutchinson *in his individual and official
capacities*, and John Does 1-4, *in their
individual capacities*,

      Defendants.

Case No. 22-cv-03009

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

---

## INTRODUCTION

Plaintiffs are three journalists who work for Agence France-Presse ("AFP").  In April 2021, they were on assignment covering the Daunte Wright protests in Brooklyn Center, Minnesota.  While covering the protests, they were harassed and assaulted by Hennepin County Sheriff's Deputies, and gratuitously pepper-sprayed at close range despite being clearly obviously journalists, in retaliation for their exercise of their First Amendment rights.  This lawsuit seeks compensation for the damage done by this unconstitutional conduct and injunctive relief to ensure it never happens again.

## PARTIES

1.     Plaintiff Eleonore Sens is a resident of Dakar, Senegal.  Sens is a video journalist who works for the AFP.  She was on assignment covering the Daunte Wright

protests in Brooklyn Center, Minnesota on April 16, 2021, when she was pepper sprayed in the face at close range by John Doe 1, a Hennepin County Sheriff's Deputy.

2.　　Plaintiff Chandan Khanna is a Florida resident.  Khanna is a photojournalist who works for the AFP.  He was on assignment covering the Daunte Wright protests in Brooklyn Center, Minnesota on April 16, 2021, when he was pepper sprayed in the face at close range by John Doe 1, a Hennepin County Sheriff's Deputy.

3.　　Plaintiff Robin Legrand is a District of Columbia resident.  Legrand is a print journalist who works for the AFP.  He was on assignment covering the Daunte Wright protests in Brooklyn Center, Minnesota on April 16, 2021, when he was pepper sprayed in the face at close range by John Doe 1, a Hennepin County Sheriff's Deputy.

4.　　Defendant David Hutchinson is the Hennepin County Sheriff, with supervisory responsibility over the Hennepin County Sheriff's Office and its deputies. Sheriff Hutchinson is a Minnesota resident.  At all times relevant, Sheriff Hutchinson was one of the chief policymakers of the Hennepin County Sheriff's Office. At all times relevant, Sheriff Hutchinson ordered, authorized, and/or acquiesced in the violations of Plaintiffs' rights as alleged herein. At all times relevant, Sheriff Hutchinson was acting under color of state law, within the course and scope of his official duties and in accordance with the customs, policies, and practices of the Hennepin County Sheriff's Office.  Sheriff Hutchinson is sued in his official and individual capacities.

5.　　Defendant John Doe 1 is the unidentified Hennepin County Sheriff's Deputy who pepper sprayed Plaintiffs at close range.  Defendants solely possess the information necessary to identify John Doe 1.

6.     Defendants John Does 2-4 are the Hennepin County Sheriff's Office deputies and/or officers who supervised John Doe 1 and at all times were acting under color of state law, within the course and scope of their official duties and in accordance with the customs, practices, and policies of their employing agency.  Defendants solely possess the information necessary to identify John Does 2-4.

## JURISDICTION AND VENUE

7.     Plaintiffs' claims arise under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the First and Fourth Amendments, as incorporated against the States, their agencies, and their municipal divisions through the Fourteenth Amendment.

8.     Jurisdiction is proper in this Court according to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the United States Constitution and federal law.

9.     This Court has supplemental jurisdiction over the included Minnesota state law claims pursuant to 28 U.S.C. §1367.

10.     Venue is proper in this district under 28 U.S.C. § 1391, as Defendants reside in this district, and the events or omissions giving rise to the claims set forth herein occurred in this district.

11.     Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## THE DAUNTE WRIGHT KILLING AND RESULTING PROTESTS

12.     On April 11, 2021, a Brooklyn Center police officer shot and killed Daunte Wright, an unarmed Black man, during a traffic stop purportedly initiated because of Wright's expired automobile tabs.

3

13.    The killing of Daunte Wright generated large protests against law enforcement violence and discrimination.  These protests occurred primarily outside the Brooklyn Center City Hall where the Brooklyn Center Police Department is headquartered and continued through April 17, 2021.

14.    The Minnesota State Patrol provided law enforcement resources in response to the Daunte Wright protests in Brooklyn Center, including troopers armed with so-called "less-lethal" crowd control weapons.

15.    On April 12, 2021, Governor Walz signed Emergency Executive Order 21-17 declaring a peacetime emergency in the wake of the killing of Daunte Wright and ordering "state agencies, in cooperation with appropriate federal agencies, to assist local units of government as they respond to and recover from this emergency."

16.    Also on April 12, 2021, Governor Walz signed Emergency Executive Order 21-18.  It imposed a curfew on all public areas within Anoka, Dakota, Hennepin and Ramsey counties from 7:00 p.m. on April 12 until 6:00 a.m. on April 13.  The Order specifically exempted "members of the news media" from the curfew.

17.    Similarly, as the Daunte Wright protests continued during the week of April 11, 2021, other municipalities enacted curfews of varying lengths and timing.  Like Governor Walz's curfew, these municipal curfews exempted the news media.

18.    Operation Safety Net ("OSN") is an unincorporated association of law enforcement agencies that assembled to plan for and conduct crowd control operations during the protests expected to occur during the murder trial of Derek Chauvin and the trials of the other MSP officers who participated in the murder of George Floyd.

19.     The OSN member agencies acted in concert with one another during the Daunte Wright protests.  The agencies, including Defendant Hutchinson, communicated and coordinated strategy, tactics and operations on the ground during the protests in Brooklyn Center.

20.     During the Daunte Wright protests, Hutchinson had operational command of the law enforcement officers at the scene as part of the OSN function.  The Brooklyn Center Police Department and Hennepin County Sheriff's Office shared primary jurisdiction over the protest area, but because the Brooklyn Center Police Chief resigned after Wright's killing, Sheriff Hutchinson effectively had command over law enforcement at the scene. Specifically, on April 13, Brooklyn Center made a request through the Hennepin County Chiefs of Police Association for the Hennepin County Sheriff's Office to take the lead role in incident command at the protests, and that night the HCSO and Hutchinson assumed command of the law enforcement response to the protests under a unified command structure.  Continuing after April 13, HCSO remained the lead agency in response to the protests.  Hutchinson remained in command of the law enforcement response throughout the protests, including on April 16, the date Plaintiffs were attacked by HCSO.

21.     Prior to April 16, Brooklyn Center Mayor Michael Elliott complained publicly about the constitutional violations and excessive force engaged in under Hutchinson's command, and Hutchinson was aware of these criticisms and ignored them as he personally directed and commanded the law enforcement response to the protests.

22.     OSN used a real-time data-sharing tool called Intrepid Response, which is sold on a subscription basis by AT&T and has been described as "Slack for SWAT."  It

allowed the real time sharing of images, video (including footage captured by drones), geolocations of team members and targets, and other data among officers and command staff.

23.    Per Intrepid Network's website (the company that sells Intrepid Response), Intrepid Response is a communication platform that offers "a geospatial solution with feature-rich live mapping" and the ability to "view all personnel, tagged assets and map markers in near real-time." This allows for "next-generation situational awareness makes the Intrepid Response for FirstNet platform the ultimate resource for tactical coordination and front-line intelligence." The application, which can be downloaded like any other smartphone app, offers real-time data sharing, a platform for coordination of multi-agency teams, "highly secure team communications" (including push-to-talk and instant messaging), and more.

24.    During the Daunte Wright protests in Brooklyn Center, including but not limited to the protests on April 16, 2021, Hutchinson received information via Intrepid Response in real time to assess protest conditions and adjust the law enforcement response accordingly, which informed his decisions regarding authorization of use of force.

25.    OSN also coordinated use of State Patrol aviation and Closed-Circuit TV resources to obtain real-time surveillance of the protests to monitor the protests and related law enforcement activities, and Hutchinson knew of and participated in this surveillance

and monitoring, through which he was aware of law enforcement activities targeting journalists, including those identified in this Complaint.

26.    As the on-site commander directing the response to the protesters, monitoring the protests and law enforcement response in real time through the Intrepid system, and various surveillance mechanisms of OSN and other law enforcement agencies, as well as real time communication with HCSO deputies and HCSO supervisors at the scene, Hutchinson was aware of the unlawful use of force and First Amendment violations against journalists, including the violations of Plaintiffs' rights described herein.

27.    Further, as chief policymaker at the HCSO, as well as a member of OSN and the operational commander of the law enforcement response to the protests, Hutchinson directly participated in planning and executing the constitutional violations detailed herein.

28.    Despite his real time personal knowledge of the protest responses and unconstitutional conduct described herein, Hutchinson did nothing to quell the law enforcement misconduct and instead ratified it in an ongoing failure of supervision that enabled the constitutional violations identified herein.

**DEFENDANTS' UNCONSTITUTIONAL CONDUCT TOWARD PLAINTIFFS**

29.    On April 16, 2021, Plaintiffs were covering the Daunte Wright protests for AFP.

30.    The three worked together and stayed close as they reported on the protests.

31.    Plaintiff Khanna was wearing a press pass hanging in front, carried two large professional cameras, and was wearing a helmet that said "PRESS".

32.    Plaintiff Sens was carrying a large professional camera.

33.     Plaintiff Legrand was wearing a bright yellow vest that said "PRESS" in large letters.

34.     Plaintiffs were easily identifiable as members of the press, even from a great distance, given the multiple press badges they displayed, Legrand's bright yellow "PRESS" vest, and the large professional cameras Plaintiffs carried.

35.     At roughly 9pm on April 16, 2021, the Honorable Wilhelmina Wright issued a temporary restraining order barring the State Patrol and those acting in concert with the State Patrol from arresting, threatening, or using pepper spray and other less-lethal weapons on journalists, or ordering journalists to disperse.

36.     HCSO was an agency acting in concert with the State Patrol in responding to the Daunte Wright protests.

37.     The temporary restraining order issued as a result of a Motion filed on April 14, 2021, in the case *Goyette, et al. v. Harrington, et al.*, and in that Motion the *Goyette* plaintiffs identified numerous instances of unconstitutional conduct against journalists occurring at the Brooklyn Center protest site, where Hutchinson was operational commander of the protest response.

38.     Hutchinson and John Does 1-4 were aware of the *Goyette* plaintiffs' Motion for a Temporary Restraining Order.  Despite being on notice of the unconstitutional conduct identified in the *Goyette* Motion, both through their awareness of the Motion itself, as well as their real time observation of unconstitutional conduct unfolding over the days of protests at Brooklyn Center, neither Hutchinson nor any of the John Does took any step

to train, instruct, supervise, intervene, or any other action to stop or reduce the risk of unconstitutional conduct against journalists covering the protests.

39.    Around 10pm on April 16, pursuant to the orders of operational commander Hutchinson, law enforcement made an announcement that the assembled protesters – including journalists – must disperse.  At the time, no curfew was in place, and law enforcement, including Hutchinson, were aware of the Court's temporary restraining order and knew that this dispersal order violated the injunction.

40.    Shortly after the dispersal announcement, Plaintiffs saw protesters beginning to run.  Plaintiffs stepped away from the crowd but continued to cover the protest, seeking shelter near an apartment building.

41.    Hennepin County Sheriff's Deputies rushed into the crowd of protesters, yelling for protesters to "get on the fucking ground" and pepper spraying protesters who were simply trying to leave the scene.

42.    Plaintiff Khanna saw an HCSO deputy pepper spray photojournalist Tim Evans at close range.  Plaintiff Khanna photographed some of the assault on Evans by HCSO deputies:



43.    Upon seeing Khanna documenting HCSO's unconstitutional assault on Evans, another HCSO deputy – John Doe 1 –  rushed to assault Khanna and the other Plaintiffs.  Khanna captured the moment when John Doe 1 began to pepper spray him at close range:



44.    John Doe 1 then pepper sprayed the other Plaintiffs, as seen in this picture taken by another photojournalist:



45.    As this picture shows, there is no way that John Doe 1 or the other Defendants could have mistaken Plaintiffs for protesters.  Plaintiffs are clearly identifiable as members of the press, protected by the federal injunction that issued hours before this picture was taken.

46.    When John Doe 1 saw that Khanna continued to try to take pictures despite being incapacitated by the pepper spray, John Doe 1 returned to pepper spray Khanna again.

47.    Legrand experienced burning sensations in his hands and eyes that lasted for hours after he was pepper sprayed.  Sens also experienced extreme pain and unstoppable

burning on her hand, and she could only sleep after sticking her hand into a bag of ice to reduce the pain.

48.    Khanna was sprayed directly on the face and in the ears.  His ears burned for 5 days due to the spray, and the burning pain actually increased over time, rendering it impossible for him to sleep.

49.    While John Doe 1 was pepper spraying Plaintiffs, Legrand shouted, "PRESS! PRESS!"

50.    Despite clearly being members of the press, one HCSO deputy shouted, "GET ON THE FUCKING GROUND!" at Plaintiffs.  Another told Plaintiffs, "GET ON YOUR FUCKING KNEES!"

51.    Another HCSO deputy yelled at Plaintiffs to get away from the area and directed them behind the apartment building that Plaintiffs had been standing next to for shelter.  Plaintiffs stumbled, disoriented, around the side of the building.  There they saw law enforcement arresting protesters and other members of the press.  An HCSO deputy then told Plaintiffs, "you can't film this" and told Plaintiffs, "if you point your camera [over there], I'll arrest you right now."

52.    As Plaintiffs attempted to leave the scene, they were stopped by State Patrol, photographed and catalogued, and pictures were taken of their photo identification.

53.    In addition to their physical injuries, pain and suffering, Plaintiffs also suffered emotional trauma from this vicious and targeted attack by HCSO.

54.    Plaintiffs intend to continue covering protests and other events of public concern in Minnesota and elsewhere.  Defendants' actions chilled and continued to chill

Plaintiffs' exercise of their First Amendment rights and would chill an ordinary person of reasonable firmness.

55.    HCSO harassed and threatened other journalists on April 16 to interfere with and prevent their constitutionally protected reporting on the protest response.  For example, HCSO deputies screamed at and threatened journalist Jon Farina, who was attempting to report on the protest response, until he ceased his reporting.  At the time, Farina was clearly identifiable as a member of the press, HCSO knew he was a member of the press, and HCSO's animus toward the press motivated their unconstitutional conduct toward Farina, Plaintiffs, and others.

56.    HCSO deputies also assaulted journalist Tim Evans on April 16.  Evans was clearly identifiable as a member of the press and was actually taking photos with a large professional camera when HCSO deputies pepper sprayed him, tackled him, and placed him under arrest.  The deputy punched Evans in the face and told him to "shut the fuck up" after Evans identified himself as a member of the press.

57.    HCSO deputies had a history of violating journalists' First Amendment rights prior to the Daunte Wright protests.  For example, in 2016 HCSO deputies assisted with the response to the Dakota Access Pipeline protests.  During those protests, HCSO deputies arrested, assaulted, and pepper-sprayed journalists, including journalists from the nonprofit independent media organization Unicorn Riot.  On information and belief, none of these deputies were disciplined.

58.    Further, the HCSO operates and administers the Hennepin County Jail, at which a number of unlawfully arrested journalists were processed and detained during both

the George Floyd and Daunte Wright protests, including CNN journalist Carolyn Sung who was arrested and detained at the jail after reporting on the Daunte Wright protests.  In at least some of these instances, the journalists informed HCSO booking deputies that they were in fact journalists whose reporting was protected by the First Amendment.

59.     Hutchinson and other policymakers at the HCSO were aware of past unconstitutional conduct related to journalists but did not institute adequate training in the wake of prior incidents to prevent the unconstitutional conduct HCSO directed toward Plaintiffs.

60.     Further, Hutchinson and other HCSO policymakers were aware of the lawsuits arising out of unconstitutional conduct by law enforcement during the George Floyd protests and knew that HCSO deputies required adequate training and supervision to prevent similar unconstitutional conduct but did nothing to address that concern.

61.     The unchecked unconstitutional conduct of the HCSO deputies at the Daunte Wright protests reflects the HCSO's failure to train and supervise its deputies with respect to the First Amendment rights of journalists, and a pattern and practice of targeting journalists in retaliation for the journalists' exercise of their First Amendment rights.

62.     Hutchinson personally supervised and authorized the attack on Plaintiffs in his capacity as incident commander at the scene of the protests in Brooklyn Center. Hutchinson declared that the protests on April 16 constituted an unlawful assembly. Hutchinson then personally gave the order for HCSO deputies and personnel from other agencies to disperse the crowd, including any journalists present, which directly caused the

injuries suffered by Plaintiffs when HCSO deputy John Doe 1, following Hutchinson's order, attacked and pepper-sprayed Plaintiffs.

63.    When Department of Corrections Commissioner Paul Schnell commenced an internal investigation of the attack on Plaintiffs, Hutchinson refused to take the investigation seriously and reacted with hostility toward the Commissioner.  In preparation for a call with Commissioner Schnell regarding the incident, a member of Hutchinson's command staff asked Hutchinson if he needed to discuss Hutchinson's response to Schnell prior to the call.  Hutchinson responded via text: "Idk.  Maybe.  'F—k you-ya bald mumbling f----t,'" Hutchinson wrote, using a homophobic slur to refer to Schnell, in obvious denigration of the investigation and dereliction of Hutchinson's responsibilities to ensure HCSO deputies are properly supervised and trained to respect the First Amendment rights of journalists.

## CAUSES OF ACTION

### COUNT I:
### FIRST AND FOURTEENTH AMENDMENTS
### FREEDOM OF SPEECH AND THE PRESS, 42 U.S.C. § 1983
### *DEFENDANT JOHN DOE 1*

64.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

65.    Plaintiffs engaged in constitutionally protected acts of journalism on April 16, 2021.

66.    John Doe 1, at all times acting under color of law, used unlawful use of force to curb Plaintiffs' exercise of their First Amendment rights.

67.    The actions of John Doe 1 were willful, malicious and in violation of the known rights of Plaintiffs.

68.    Alternatively, John Doe 1 acted with reckless disregard for the constitutional rights of Plaintiffs.

69.    Plaintiffs suffered physical injury, great pain and suffering, and emotional distress as a direct and proximate result of John Doe 1's violations of their constitutional rights.

70.    Punitive damages in an amount to be determined by the jury are available against John Doe 1 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

71.    Defendants are jointly and severally liable to Plaintiffs.

### COUNT II:
### FIRST AND FOURTEENTH AMENDMENTS
### RETALIATION, 42 U.S.C. § 1983
### *DEFENDANT JOHN DOE 1*

72.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

73.    Plaintiffs engaged in constitutionally protected acts of journalism on April 16, 2021.  Plaintiffs will continue to do so in the future.

74.    John Doe 1's use of chemical weapons against Plaintiffs, for no legitimate law enforcement reason, was retaliation for Plaintiffs' exercise of their First Amendment rights.

75.    The actions of John Doe 1 were willful, malicious and in violation of the known rights of Plaintiffs.

76.    Alternatively, John Doe 1 acted with reckless and deliberate indifference to the constitutional rights of Plaintiffs.

77.    Plaintiffs reasonably fear the continued use of excessive force against them if they continue to engage in constitutionally protected activity.

78.    John Doe 1's acts would chill a person of reasonable firmness from continuing to engage in a constitutionally protected activity. These acts did, in fact, chill Plaintiff from continuing to engage in constitutionally protected journalism.

79.    The injuries Plaintiffs suffered due to John Doe 1's use of excessive force actually prevented Plaintiffs from exercising their First Amendment rights.

80.    Plaintiffs suffered physical injury, great pain and suffering, and emotional distress as a direct and proximate result of John Doe 1's violations of their constitutional rights.

81.    Punitive damages in an amount to be determined by the jury are available against John Doe 1 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

82.    Defendants are jointly and severally liable to Plaintiffs.

## COUNT III:
## FOURTH AND FOURTEENTH AMENDMENT
## UNREASONABLE FORCE, 42 U.S.C. § 1983
### *DEFENDANT JOHN DOE 1*

83.     Plaintiffs restate and reallege all previous paragraphs of this Complaint.

84.     By the actions described above, John Doe 1 violated and deprived Plaintiffs of their clearly established and well-settled right to be free from excessive force under the Fourth and Fourteenth Amendments to the United States Constitution.

85.     John Doe 1 was acting under color of law when he violated Plaintiffs' Fourth and Fourteenth Amendment rights.

86.     John Doe 1's actions were willful, malicious and in violation of the known rights of Plaintiffs.

87.     Alternatively, John Doe 1 acted with reckless and deliberate indifference to Plaintiffs' constitutional rights.

88.     John Doe 1 committed these acts without forewarning and, as a result, his acts were objectively unreasonable.

89.     Plaintiffs did not pose a threat to any of law enforcement officers or agents or any other person.

90.     Plaintiffs suffered physical injury, great pain and suffering, and emotional distress as a direct and proximate result of John Doe 1's violations of their constitutional rights.

91.     Punitive damages in an amount to be determined by the jury are available against John Doe 1 and are hereby claimed as a matter of federal common law under *Smith*

*v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

92.　　Defendants are jointly and severally liable to Plaintiffs.

### COUNT IV:
### 42 U.S.C. § 1983 - SUPERVISORY LIABILITY
### *DEFENDANT HUTCHINSON*

93.　　Plaintiffs restate and reallege all previous paragraphs of this Complaint.

94.　　At all times relevant, Hutchinson had supervisory responsibility and authority over John Does 1-4.

95.　　Hutchinson's failure to train and supervise his supervisees, employees and agents, including John Does 1-4, and failure to issue corrective instructions after violations were brought to light, caused John Does 1-4 to violate the First Amendment rights of Plaintiffs.

96.　　Hutchinson's failure to supervise and train his supervisees, employees and agents, including John Does 1-4, with respect to the First Amendment rights of Plaintiffs, including a failure to investigate and discipline officers for First Amendment violations, amounts to reckless and deliberate indifference to the rights of Plaintiff.

97.　　The HCSO's need for more supervision or training with respect to the First Amendment was so obvious, and the inadequacy of the training and supervision so likely to result in the violation of constitutional rights, that Hutchinson demonstrated his reckless and deliberate indifference to the need for such training and supervision in failing to provide it.

98.    Hutchinson's failure to train and supervise his supervisees, employees and agents, including John Does 1-4, and failure to issue corrective instructions after violations were brought to light, caused John Does 1-4 to violate the Fourth Amendment rights of Plaintiffs.

99.    Hutchinson's failure to supervise and train his supervisees, employees and agents, including John Does 1-4, with respect to the Fourth Amendment rights of Plaintiff, including a failure to investigate and discipline officers for Fourth Amendment violations, amounts to reckless and deliberate indifference to the rights of Plaintiffs.

100.    Alternatively, Hutchinson's failure to provide HCSO with adequate supervision and training with respect to the First and Fourth Amendments constituted gross negligence.

101.    Plaintiffs suffered physical injury, great pain and suffering, and emotional trauma and distress as a direct and proximate result of Hutchinson's failure to adequately supervise and train their employees and agents, including John Does 1-4.

102.    Punitive damages in an amount to be determined by the jury are available against Hutchinson and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

103.    Defendants are jointly and severally liable to Plaintiffs.

**COUNT V:**
**42 U.S.C. § 1983 – SUPERVISORY LIABILITY**
*DEFENDANTS JOHN DOES 2-4*

104.   Plaintiffs restate and reallege all previous paragraphs of this Complaint.

105.   Defendants John Does 2-4 at all times material hereto were members of the HCSO with supervisory responsibility over John Doe 1.

106.   By the actions described above, John Does 2-4, acting under color of state law, observed or intended the use of excessive force set forth in Count III, and none intervened to halt it or take other corrective action.

107.   By the actions described above, John Does 2-4, acting under color of state law, observed or intended the violation of Plaintiffs' First Amendment rights and none intervened to halt it or take corrective action.

108.   Each of John Does 2-4 observed, and had the realistic opportunity to prevent, John Doe 1's use of unlawful levels of force against Plaintiffs while Plaintiffs were physically separated from the protest activity in the area and engaged in the constitutionally protected activity of covering the Daunte Wright protests and the police response to the protests. Yet, John Does 2-4 failed to intervene and prevent the assault.

109.   John Does 2-4 issued orders allowing John Doe 1 to violate Plaintiffs' First Amendment rights.

110.   John Does 2-4 issued orders allowing John Doe 1 to use excessive force against Plaintiffs in violation of the Fourth Amendment.

111.   The coordinated assault by HCSO on protesters and journalists described above, and John Doe 1's repeated use of chemical agents on Plaintiffs, despite their being

clearly identifiable as members of the press, made it clear that John Doe's use of force was planned and that John Does 2-4 not only had notice of but sanctioned the unconstitutional conduct of John Doe 1.

112.    Plaintiffs suffered physical injury, great pain and suffering, and emotional trauma and distress as a direct and proximate result of the acts and omissions of John Does 2-4.

113.    Punitive damages in an amount to be determined by the jury are available against John Does 2-4 and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

114.    Defendants are jointly and severally liable to Plaintiffs.

### COUNT VI:
### FAILURE TO INTERVENE, 42 U.S.C. § 1983

115.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

116.    During the constitutional violations described in this Complaint, including the use of chemical agents on Plaintiffs while they exercised their First Amendment rights, John Does 2-4 and Defendant Hutchinson ("the Supervisory Defendants"), stood by without intervening to prevent the misconduct.

117.    The Supervisory Defendants had a duty to intervene to prevent the constitutional harms and personal injuries described in this Complaint.

118.    The Supervisory Defendants had the authority to intervene to prevent the constitutional harms and personal injuries described in this Complaint.

119.    The Supervisory Defendants had a reasonable opportunity to prevent the constitutional harms and personal injuries described in this Complaint but failed to do so.

120.    The Supervisory Defendants acted with reckless and deliberate indifference to the constitutional rights of Plaintiff when they failed to intervene to prevent the constitutional harms and personal injuries described in this Complaint.

121.    The misconduct described in this Complaint was undertaken under color of state law, and the Supervisory Defendants acted at all times under the color of state law when they failed to intervene to prevent the constitutional harms and personal injuries described in this Complaint.

122.    Punitive damages in an amount to be determined by the jury are available against Supervisory Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983), and as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

123.    Defendants are jointly and severally liable to Plaintiffs.

**COUNT VII:**
**42 U.S.C. § 1983 – First and Fourth Amendments**
***Monell* Claim[1]**

124.    Plaintiffs restate and reallege all previous paragraphs of this Complaint.

125.    Plaintiffs engaged in constitutionally protected acts of observing and recording events of public interest, including public demonstrations and the conduct of law

---

[1] This claim relates to the unconstitutional policies and practices of HCSO and is brought against Defendant Hutchinson in his official capacity pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny.

enforcement officers on duty in a public place during the Daunte Wright protests. Plaintiffs will continue to do so in the future to cover the events related to the protests and law enforcement's response in Minnesota and elsewhere.

126. Defendants, acting under color of law, used excessive force to curb Plaintiffs' exercise of their First Amendment rights.

127. Plaintiffs reasonably fear the continued deployment of chemical agents without warning, unlawful seizure, and excessive force if they continue to engage in constitutionally protected activity.

128. Defendants' acts would chill a reasonable person from continuing to engage in a constitutionally protected activity. These acts did, in fact, chill Plaintiffs from continuing to observe and record some events of public interest, including constitutionally protected demonstrations and the conduct of law enforcement officers on duty in a public place.

129. It was HCSO's custom and policy, as well as its failure to train and supervise its officers, and issue corrective instructions even after violations were brought to light, and injunctive relief issued by this Court, which caused Defendants to violate the First Amendment rights of Plaintiffs.

130. HCSO's failure to supervise and train its employees and agents with respect to the First Amendment rights of Plaintiffs, including a failure to investigate and discipline officers for First Amendment violations, amounts to reckless and deliberate indifference to the rights of Plaintiffs.

131.    The pattern of uncorrected constitutional violations against journalists during the Standing Rock, George Floyd, and Daunte Wright protests demonstrates the reckless and deliberate indifference of HCSO to the rights of Plaintiffs.

132.    Given the multiple constitutional violations documented above, HCSO's past pattern and practice of such violations, and the multiple past federal lawsuits arising out of similar unconstitutional conduct – all of which was known to Hutchinson and HCSO – the need for more supervision or training was so obvious, and the inadequacy of the training and supervision so likely to result in the violation of constitutional rights, that HCSO demonstrated its reckless and deliberate indifference to the need for such training and supervision.

133.    Further, the excessive and unlawful use of force, and the rampant constitutional violations, were so widespread, well-known, and obvious to HCSO that its continued use of excessive force against Plaintiffs and others, and continued violation of constitutional rights during the Brooklyn Center protests, was willful and recklessly indifferent to the rights of Plaintiffs.

134.    Plaintiffs suffered physical injury, great pain and suffering, and emotional distress as a direct and proximate result of HCSO's policies, practices and customs.

135.    Defendants are jointly and severally liable to Plaintiffs and the Plaintiff Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and as representatives of the class defined herein, pray for relief as follows:

A.    Preliminary and permanent injunctive relief enjoining HCSO from continuing its unlawful policies, practices, and customs as set forth herein;

B.    A declaration that Defendants' conduct violated the First, Fourth, and Fourteenth Amendments of the U.S. Constitution;

C.    Damages compensating Plaintiffs for their injuries, pain and suffering, including but not limited to compensatory, pecuniary, and medical expense damages;

D.    Punitive damages;

E.    An award of pre-judgment interest;

F.    An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

G.    An award of such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 1, 2022      */s/ Kevin C. Riach*

Kevin C. Riach (#0389277)
**THE LAW OFFICE OF KEVIN C. RIACH, PLLC**
125 Main St. SE, Suite 339
Minneapolis, MN 55414
Telephone: (612) 203-8555
kevin@riachdefense.com

***ATTORNEY FOR PLAINTIFFS***